UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BIO ENERGY (WASHINGTON), LLC, | CASE NO.  2:23-cv-00542-LK |
| Plaintiff, | ORDER STRIKING SECOND AMENDED COMPLAINT |
| v. | |
| KING COUNTY, WASHINGTON, | |
| Defendant. | |

This matter comes before the Court on Plaintiff Bio Energy (Washington), LLC's Second Amended Complaint, Dkt. No. 79, and Defendant King County, Washington's Response thereto, Dkt. No. 81. For the reasons set forth below, the Court strikes the second amended complaint and orders Bio Energy (Washington), LLC ("BEW") to file a third amended complaint that is consistent with the Court's prior order and Federal Rule of Civil Procedure 15.

## I.    BACKGROUND

On May 3, 2024, the Court granted in part BEW's motion to file a second amended complaint, holding that BEW could (1) add a claim under 42 U.S.C. § 1983 that King County violated its procedural due process rights, (2) add two declaratory judgment claims, and

(3) augment its allegations regarding a breach of the duty of good faith. Dkt. No. 76 at 9–16. The Court also held that BEW could not (1) join Puget Sound Energy ("PSE") as a necessary party, or (2) maintain in the complaint its contention that "BEW Plant Condensate is not 'solid waste,' based on the exclusions set out in 40 CFR 261.4(a)(2) and in WAC 173-303-071(3)(b)," or add allegations relating solely to that claim because the Court previously granted summary judgment against BEW on that claim. *Id.* at 6–9, 12–15 (quoting Dkt. No. 60-1 at 2–3, 54); *see also* Dkt. No. 55 (order on cross motions for partial summary judgment). In its May 3 order, the Court required BEW to "file a redlined and clean version of a proposed second amended complaint that is consistent with this Order within 14 days." Dkt. No. 76 at 16–17. The Court also permitted the County to file a brief "identifying any inconsistencies between th[e] Order and BEW's proposed second amended complaint." *Id.* at 17. BEW timely filed a redlined second amended complaint, Dkt. No. 79, and King County filed a response, Dkt. No. 81.

## II.  DISCUSSION

King County argues that some of BEW's allegations in its second amended complaint are inconsistent with the Court's order rejecting BEW's argument that Plant Condensate is not "solid waste." Dkt. No. 81 at 2–3. The following bolded content is at issue:

> 83. The County has refused to withdraw the Force Majeure Notice, and DOE has **refused to change its determination that the BEW Plant Condensate is a "solid waste"** which will designate as a "dangerous waste" under state law if it meets the toxicity criteria for arsenic. As a consequence of these refusals, BEW has been forced to shut down all plant operations out of an abundance of caution, **even though it firmly believes the Plant Condensate does not qualify as "solid waste" (and hence cannot be designated as a "dangerous waste") since it is regulated as a point source industrial wastewater discharge under the County's NPDES permit issued pursuant to Section 402 of the Clean Water Act—a discharge which is specifically exempted from regulation as a solid waste pursuant to WAC 173-303-071(3)(b).**

> 84. Recently, the Court has denied BEW's partial summary judgment motion that the Plant Condensate is exempt from regulation as a solid waste pursuant to WAC 173-303- 071(3)(b). (Dkt 55), thereby leaving the path open for DOE to declare it

as "dangerous waste" under the Hazardous Waste Management Act, and designate BEW as the "generator" of that waste. . . .

106. BEW challenged both the County's force majeure notice, as well as the preliminary determination issued by the DOE that the plant condensate must be designated as "dangerous waste." In a series of letters to John Level, the Assistant Attorney General assigned to the Department of Ecology, **BEW's counsel challenged the legal basis for the preliminary determination, and argued that the BEW plant condensate did not qualify as "solid waste" under the State's Hazardous Waste Management Act, and hence couldn't be classified as "dangerous waste." BEW provided extensive caselaw supporting its position**, but Mr. Level refused to provide a substantive response to the BEW arguments.

107. On June 14, 2022 the KCIW issued another Notice of Violation of Permit 7842- 03 to the Solid Waste Division. The notice stated that the Solid Waste Division was in violation of its permit because it was allowing the introduction of the BEW plant condensate into the leachate lagoons, condensate that the KCIW claimed was hazardous waste based on its arsenic content. **KCIW provided no basis for its determination that the plant condensate was a solid waste, and hence could be declared a hazardous waste**.

108. . . . The Department provided no legal justification for its assumption that the condensate constituted solid waste, and ignored the exception set out in WAC 173-303-071-3(b) from regulation as a solid waste for point source industrial wastewater discharges that are subject to regulation under Section 402 of the Clean Water Act—which covers the BEW plant condensate.

Dkt. No. 79 at 30–31, 38–39.

Although these allegations overlap with BEW's now-rejected solid waste claim, *id.*, their function seems to be to add context rather than to revive the claim in any manner, *see* Dkt. No. 79 at 30–31, 38–39. BEW has also deleted the allegations regarding its solid waste claim that the Court stated could not remain in the complaint. Dkt. No. 76 at 13, 15 (citing allegations at Dkt. No. 60-1 at 2–3, 54–55).

King County also contends that several paragraphs in BEW's second amended complaint "conflict with the Court's Order because they were included in the second amended complaint BEW proposed as an exhibit to its motion to amend solely in connection with establishing a factual

1   basis to add PSE to the case with respect to ownership of RINs," including paragraphs 137–141.

2   Dkt. No. 81 at 4–5 (citing Dkt. No. 79 at 48–49). These paragraphs allege as follows:

3       137. PSE has, or may have, an interest in the resolution of Plaintiff's claim that the
        D-3 RINs are not included within the definition of "Emissions Credits" under the
4       PDA, but the Court has determined that PSE is not a "necessary" party to the
        resolution of the disputes between Plaintiff and Defendant.
5
6       138. As noted above, in 2011, the County and PSE entered into an agreement (the
        "PSE Agreement') governing King County's sale of Emissions Credits to PSE. The
        2011 PSE Agreement had an initial eleven-year term which would have been
7       automatically extended without any further action being required of the parties, to
        February 11, 2026.
8
9       139. In 2019, the County began claiming, for the first time, that the D-3 RINs
        associated with the BEW RNG were included in the definition of "Emissions
        Credits" under the PDA and are owned by the County, even though RINs are not
10      mentioned anywhere in the definition, or in the rest of the PDA. Nevertheless, the
        County claimed that PSE had no right to share the value of the RINs with BEW.
11
12      140. During the 2019 dispute, the County informed PSE that it did not intend to
        renew the 2011 PSE Agreement upon the expiration of its initial term, presumably
        to gain negotiating leverage over PSE; and on March 29, 2019, the County carried
13      out its threat and sent a letter to PSE notifying PSE that the County was terminating
        the PSE Agreement effective as of the end of the Initial Term, which was December
14      31, 2022. The County and PSE eventually signed anew, replacement six-month
        agreement in late December of 2022 that ran from January 1, 2023, to June 30,
15      2023.

16      141. The County continued its pressure campaign to wrongfully seize the RINs and
        interfere with BEWs rights by filing a lawsuit against PSE in June 2020 in King
17      County Superior Court. The County asserted a claim for breach of contract and
        asserted that PSE had failed to fully compensate the County for the sale of RINs,
18      which the County claimed were "Emissions Credits" owned by the County.
        Buckling to the County's tactics, PSE made a multimillion-dollar payment to the
19      County and settled the County's lawsuit.

20  Dkt. No. 79 at 48–49.

21      There is no discernable relevance to the allegations in Paragraph 137 now that the Court

22  has held that PSE is not a necessary party; those allegations thus have no place in the second

23  amended complaint. Furthermore, BEW has added allegations in paragraph 137 without seeking

24  leave of the Court as required by Rule 15. *Compare* Dkt. No. 60-1 at 49, *with* Dkt. No. 79 at 48

(adding "but the Court has determined that PSE is not a 'necessary' party to the resolution of the disputes between Plaintiff and Defendant."). However, paragraphs 138–141 do not appear to be aimed solely at PSE and therefore may be relevant to BEW's claims against King County. *See id.* at 49.

Finally, King County objects to "BEW's insertion of new language at Paragraph 156 of its proposed second amended complaint that was not included in the proposed second amended complaint submitted with its motion to amend, which essentially re-drafts BEW's existing declaratory judgment claim in a manner that was not authorized by the Order[.]" Dkt. No. 81 at 5. Although the changes to that paragraph are few and appear to reflect wordsmithing rather than a substantive rewrite, King County is correct that BEW did not include the same language in the proposed second amended complaint filed with its motion to amend. *Compare* Dkt. No. 60-1 at 55 (former paragraph 158), *with* Dkt. No. 79 at 54 (revised paragraph 156). BEW cannot sua sponte amend its allegations without following the requirements of Rule 15.

Because the allegations in paragraph 137 appear aimed only at non-party PSE, and BEW did not obtain leave to amend paragraphs 137 and 156, the Court strikes BEW's second amended complaint. Dkt. No. 79; *see also* Fed. R. Civ. P. 12(f) (authorizing courts to strike redundant, immaterial, or impertinent matters contained in a pleading); *Hover v. GMAC Mortg. Corp.*, No. C16-1243-JLR, 2017 WL 1080968, at *3 (W.D. Wash. Mar. 21, 2017) (striking claim that exceeded the scope of the leave to amend granted). BEW must file a third amended complaint that (1) does not include paragraph 137, and (2) includes the same language in paragraph 156 that it included in the proposed second amended complaint submitted with its motion to amend, Dkt. No. 60-1.

1

### III.     CONCLUSION

2

For the reasons discussed above, the Court STRIKES BEW's second amended complaint

3  and its exhibits. Dkt. Nos. 79–80. BEW must file clean and redlined versions of its third amended

4  complaint and the exhibits within seven days of this Order that are consistent with this Order and

5  the Court's prior order, Dkt. No. 76. The redlined proposed third amended complaint must be filed

6  as a separate docket entry and show all changes to the amended complaint, Dkt. No. 22. Within

7  seven days thereafter, the County may file a brief of no more than 2,100 words identifying any

8  inconsistencies between this Order and BEW's proposed third amended complaint.

9

Dated this 10th day of June, 2024.

10

11

Lauren King
United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24