UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BIO ENERGY (WASHINGTON), LLC,

Plaintiff,

v.

KING COUNTY, WASHINGTON,

Defendant.

CASE NO. 2:23-cv-00542-LK

ORDER GRANTING MOTION TO COMPEL

This matter comes before the Court on a motion by Plaintiff Bio Energy (Washington), LLC ("BEW") to compel Defendant King County, Washington (the "County") to permit BEW to complete an inspection of the Cedar Hills Regional Landfill ("Cedar Hills"). Dkt. No. 96. For the reasons set forth below, the Court grants the motion and allows BEW to conduct a final inspection, provided that BEW pays the County's costs and fees associated with prior canceled inspections.

## I. BACKGROUND

The facts underlying this dispute are set forth in the Court's order regarding the parties' cross motions for partial summary judgment. Dkt. No. 55. Rather than repeating those facts, the

Court focuses on the facts related to this motion, which include two requests for inspection of Cedar Hills and multiple inspection attempts gone awry.

**A.    BEW's Inspection Requests**

On February 26, 2024, BEW sent the County its First Request for Inspection pursuant to Federal Rule of Civil Procedure 34 (the "First Request"). Dkt. No. 97 at 1. The First Request sought permission for a "qualified third party" to enter Cedar Hills to "inspect, measure, test, and sample ambient methane and other emissions from the Landfill . . . using both hand held monitoring devices, as well as an unmanned aircraft system ("UAS" or "drone")." *Id.* at 5–6. The First Request promised that BEW would cooperate with the County to schedule the inspection on "mutually agreeable dates" and cooperate in rescheduling if necessitated by bad weather. *Id.* at 6. The County issued written objections and requests for clarification of the scope of the inspection, and BEW responded. *Id.* at 9–14. The County objected in part because BEW proposed to use Sniffer Robotics, Inc. to conduct the tests but that company had a conflict because it had recently performed similar work for the County. *Id.* at 2, 12, 16; *see also* Dkt. No. 102 at 2–3. BEW communicated its intent to measure airborne methane emissions, followed by surface readings with handheld equipment. Dkt. No. 105 at 1–3, 13.

On April 16, 2024, BEW served a Second Request to Defendant for Inspection pursuant to Rule 34 (the "Second Request"). Dkt. No. 106 at 1, 17–18. The Second Request sought permission to enter Cedar Hills to "evaluate the landfill gas collection system, including both active and inactive areas of the landfill." *Id.* at 17–18.

Despite their initial disagreements, the parties were able to agree on the parameters of the inspections pursuant to both requests. Dkt. No. 97 at 3–4.

**B. The July 1 Inspection Pursuant to the Second Request**

On July 1, 2024, BEW's testifying expert, Trent Markell, and BEW's plant manager, Kevin Singer, inspected the landfill gas collection facilities pursuant to the Second Request and took handheld surface emissions measurements "at the landfill gas collection well heads installed by the County at various points on the surface" of Cedar Hills. *Id.* at 3; Dkt. No. 110 at 2. The measurements taken on July 1 "were to measure the efficacy of the County's methane capture system" and not to "confirm (or reject) the existence of methane 'hot spots' identified by use of the unmanned aircraft" as contemplated by the First Request. Dkt. No. 97 at 3; *see also* Dkt. No. 110 at 2. Although the inspection pursuant to the Second Request seems to have gone smoothly, the inspections pursuant to the First Request have not.

**C. Inspections Pursuant to the First Request**

To fulfill the First Request, the County agreed to allow BEW to conduct a two-day inspection of Cedar Hills on July 8 and 9 using third party vendor Blue Skies Drones to perform the drone methane emissions monitoring. Dkt. No. 109 at 1. On July 3, 2024, Blue Skies informed BEW that it needed to postpone the inspection to July 9 and 10, and BEW informed the County. Dkt. *Id.* Then, on July 7, Blue Skies informed BEW that it could not perform the inspection on July 9 due to anticipated high temperatures and recommended moving the inspection to July 10 and 11. *Id.* at 2.

1. <u>The July 10 Inspection</u>

On July 10, County personnel assembled for the rescheduled inspection, including Joseph Newton, the landfill operations supervisor, who attended the inspection to ensure that "all inspection attendees were aware of and complied with the safety requirements applicable to

visitors at the landfill." Dkt. No. 103 at 1–2.[1] Mr. Singer arrived with a drone operator. Dkt. No. 103 at 2. Unfortunately, the drone "experienced software problems that rendered it inoperable[.]" Dkt. No. 109 at 2; *see also* Dkt. No. 105 at 1. The operator spent approximately four hours trying to get the drone to work, but was ultimately unsuccessful. Dkt. No. 103 at 2. As a result, the inspection ended at around 12:00 p.m. *Id.*

Blue Skies was unable to complete the inspection on July 11, and no inspection was conducted on that day. Dkt. No. 109 at 2. By the time BEW informed the County of the cancellation on the morning of July 11, Ms. Reid and Ms. Chavira had already traveled to Cedar Hills, and Mr. Newton and Mr. Monaghan had already cleared their schedules for the day. Dkt. No. 105 at 2.

2. <u>The July 24 Inspection</u>

The inspection eventually proceeded—to an extent—on July 24, 2024.[2] According to BEW, Blue Skies did not bring its methane emissions monitoring drone on that day because it was "inoperable and was to be fixed for the second day of inspection on July 25." Dkt. No. 110 at 3. According to the County, the drone operator informed Ms. Reid that he had intentionally not brought the methane emissions drone with him that morning. Dkt. No. 105 at 4.[3]

Instead of the emissions monitoring drone, Blue Skies flew an RGB drone to take a visual survey of Cedar Hills. Dkt. No. 110 at 1–2. The County agreed to that visual survey. Dkt. No. 105 at 3. In addition, on some unspecified date, BEW commissioned a helicopter to fly over Cedar

[1] Mr. Newton was present for the planned inspections at Cedar Hills on July 10, 11, 24, and 25. *Id.* at 1. Also present for the July 10 inspection were William Monaghan, an Engineer at Cedar Hills; Natalie Reid, an attorney for the County; and Madeline Chavira, a representative of the County's expert witness. Dkt. No. 104 at 1–2; Dkt. No. 105 at 2. The County's expert, James Peale, had traveled to Seattle to attend the July 9 inspection, but could not attend when the inspection was postponed to July 10. Dkt. No. 105 at 2.

[2] The July 24 inspection was attended by County representatives Mr. Newton, Mr. Monaghan, Ms. Reid, Rusty Bogart, and Abhimanyu Kanneganti, an engineer and expert consultant for the County. Dkt. No. 104 at 2; Dkt. No. 105 at 3.

[3] BEW did not file a declaration from anyone at Blue Skies Drones to shed light on this potential discrepancy. The Court assumes without deciding that Blue Skies did not bring the drone because it was inoperable. Dkt. No. 110 at 3.

Hills. Dkt. No. 110 at 2; Dkt. No. 98 at 2. County personnel were surprised by the sudden appearance of the helicopter on the morning of July 24 because "BEW had not disclosed that it commissioned the helicopter, that the helicopter would be performing surface emissions monitoring over the landfill, or that Mr. Singer would be using the results of the helicopter survey to identify locations for follow up sampling by a handheld monitor." Dkt. No. 105 at 3–4.

According to BEW, the purpose of the helicopter overflight was "to determine the location and quantities of methane that are escaping from" Cedar Hills and to "help the King County Solid Waste Division identify, repair, and correct issues in the gas collection and control system to capture that methane." Dkt. No. 98 at 2 (explaining that the technology the helicopter used "identifies the cloud of methane gas coming from a leak or other sources and provides approximate locations to investigate such methane gas leaks"). BEW avers that the emissions monitoring drone that Blue Skies planned to deploy "offers advantages" over the helicopter "of higher resolution, tighter grid spacing, and more accurate identification of methane leaks." Dkt. No. 110 at 2; Dkt. No. 98 at 5.

3. The July 25 Inspection

On July 25, "the Blue Skies Drones operator tested positive for COVID-19 and informed [Mr. Singer] that he could not continue the inspection" planned for that day. Dkt. No. 110 at 3. Nevertheless, Mr. Singer arrived at Cedar Hills around 8:00 that morning and informed the County's representatives that he intended to investigate potential areas of concern found by the helicopter by using handheld methane monitoring equipment. Dkt. No. 98 at 3. Mr. Singer proposed sampling various points that he identified with GPS coordinates, and Mr. Monaghan plotted those points on a map of Cedar Hills. Dkt. No. 104 at 3. After reviewing the proposal, Mr. Newton refused to allow Mr. Singer to sample locations in Area 8, "which is the portion of the landfill that is actively receiving waste." Dkt. No. 103 at 3. Mr. Newton avers that it would have

been unsafe for Mr. Singer to walk on Area 8 because "the active face of the landfill is a hazardous environment" with "steep slopes of exposed refuse" that "presents hazards for slipping and falling on unstable footing and steep slopes, as well as the potential for injuries from sharp or broken objects." *Id.* Mr. Newton also confirmed that an area Mr. Singer sought to sample "was located directly below active construction on Area 8 and was unsafe due to falling debris," and another proposed location "was at the intersection of haul roads to Area 8 and was unsafe due to high truck and trailer traffic." *Id.* (explaining that to accommodate Mr. Singer's request to sample the intersection area, the County would have had to "stop all truck traffic to and from Area 8," thus "disrupt[ing] disposal operations and pos[ing] a significant operational burden to the landfill and truck drivers"); *see also* Dkt. No. 104 at 3–4.[4] Mr. Singer next proposed additional areas to sample, which Mr. Monaghan mapped out. Dkt. No. 104 at 4, 8. Mr. Singer then began sampling, accompanied by Mr. Monaghan, Ms. Reid, Mr. Newton, Mr. Bogart, and Mr. Kanneganti. *Id.* at 4.

Mr. Singer contends that the County denied him the ability to test "even a few feet from the GPS coordinates that had been created by the helicopter overflight, despite strong evidence of methane leakage just a few feet away." Dkt. No. 98 at 3 (stating that because "the helicopter measures methane from elevations of around 100 [feet] above ground level, it is accepted industry practice to traverse an area around the GPS coordinates where methane was detected in order to find leaks"). Mr. Newton denied Mr. Singer's request to "follow his nose" to the nearby sampling points because he believed that Mr. Singer was requesting to walk up the face of Area 8, which would have been unsafe. Dkt. No. 103 at 3–4; Dkt. No. 104 at 4. Mr. Singer states that in total, he was denied access to 13 of the 19 locations he selected for monitoring. Dkt. No. 98 at 3. The

---

[4] The County avers that before the inspection, its counsel "had repeatedly informed counsel for BEW that sampling could not be conducted on the active face of Area 8 due to safety and liability issues." Dkt. No. 105 at 5.

County responds that Mr. Singer was permitted to sample 12 of the 25 locations he selected once they were determined to be safe and accessible. Dkt. No. 105 at 6.

The County has expended a total of $30,173.56 in expert and attorney's fees to accommodate BEW's inspection requests, including the inspections cancelled at the last minute. Dkt. No. 105 at 8.

**D. BEW Filed Its Motion to Compel**

On August 1, 2024, BEW notified the County of its intent to finish its inspection on August 7, 2024. Dkt. No. 97 at 4. The County responded that the additional inspection would be unduly burdensome on the County's resources and duplicative of BEW's past inspections. *Id.*

The parties met and conferred on August 2, 2024, but were unable to resolve this dispute. Dkt. No. 96 at 5. BEW then filed this motion seeking an order compelling the County "to permit [BEW] and [its] third party vendor entry into [Cedar Hills] to inspect, measure, test, and sample ambient methane and other emissions from [Cedar Hills] using a hand held monitoring device and unmanned aircraft system and/or drone until the inspection is completed." Dkt. No. 96-1 at 1.

**II. DISCUSSION**

**A. Legal Standards**

Each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In evaluating a disputed discovery request, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Materials need not be admissible in evidence to be discoverable. *Id.* District courts ultimately retain broad discretion to permit or deny discovery, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and this broad

discretion encompasses relevancy determinations, *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Rule 34 "permit[s] entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). "Typically, a party is not entitled to a second inspection." *Khoa Hoang v. Trident Seafoods Corp.*, No. C06-1158-RSL, 2007 WL 2138779, at *4 (W.D. Wash. July 23, 2007). However, courts allow second inspections when warranted. *See, e.g.*, *id.* (granting plaintiff's motion for second, brief inspection of a fish processing machine's blades where the plaintiff was first only allowed to inspect a bladeless machine); *Jaeger v. BNSF Ry. Co.*, Case No. C23-930-RAJ, 2024 WL 2209550, at *2 (W.D. Wash. May 16, 2024). Courts consider whether a second inspection would be "unduly burdensome or disproportionate to the needs of the case," *Jaeger*, 2024 WL 2209550, at *2 (quoting *Manclark v. Oceans Marine Elecs., Inc.*, No. 8:19-cv-00218-MCS (JDEx), 2020 WL 7265412, at *3 (C.D. Cal. Oct. 16, 2020)), and balance "the degree to which the proposed inspection will aid in the search for truth . . . against the burdens and dangers created by the inspection," *Lopez v. United States*, No. 15-CV-180-JAH(WVG), 2016 WL 11771115, at *3 (S.D. Cal. Sept. 30, 2016) (citation omitted).

**B. BEW is Allowed an Additional Inspection**

BEW asserts, and the County does not dispute, that information regarding the amount of methane gas escaping at Cedar Hills is relevant to BEW's contention that the County has failed to employ "Good Engineering Practices" as required by the parties' agreement. Dkt. No. 96 at 2. According to BEW, methane that escapes is not delivered to BEW and thus decreases the amount of raw landfill gas delivered to BEW for processing. *Id.*; *see also* Dkt. No. 85 at 51–55.

BEW also contends that it should be permitted an additional inspection because it was previously unable to obtain readings due to technical difficulties with the drone, and "[t]he data collected previously by the helicopter and Mr. Singer is not the same as the data sought by BEW in its First Inspection Request and is therefore not cumulative." Dkt. No. 96 at 7. The County responds that BEW has had four days to conduct inspections at Cedar Hills, and the County made clear before the July 24 inspection that it would not agree to further inspections, "regardless of whether the drone operators experience further technical issues." Dkt. No. 101 at 11. Although the parties agreed that BEW could conduct an aerial emissions survey by drone, BEW conducted an aerial survey by helicopter, without advance notice to the County. *Id.* at 12. The County further argues that another inspection would be unreasonably cumulative, duplicative, and burdensome, particularly when the inspections require diverting County employees from their regular duties and expending money on expert and attorney time. *Id.* at 12–13.[5]

Whether to permit another inspection is a close call. On one hand, BEW has already obtained some of what it sought through its First Request: it flew a previously undisclosed emission detecting helicopter over Cedar Hills on July 24, then followed up on July 25 with handheld measurements in spots indicated by the helicopter's readings. Dkt. No. 98 at 2–3. And the repeated inspections and false starts have burdened the County's personnel, its attorneys and experts, and its resources. Dkt. No. 105 at 2–5, 8–9. On the other hand, the emissions measurements are relevant, the County does not dispute BEW's assertion that the drone's readings are anticipated to be more accurate than those taken by the helicopter, and BEW should not

[5] The County also argues that "[t]hese inspections are disruptive to the County's operations and pose legitimate safety and liability concerns for the County." *Id.* at 13. However, the County was able to mitigate those impacts before by precluding Mr. Singer from testing in active truck routes or in Area 8. Dkt. No. 103 at 3–4. At this point, it is unclear whether the drone's testing will lead BEW to seek handheld testing in those areas, but if so, the parties must meet and confer and attempt to agree on the appropriate parameters.

necessarily be disadvantaged based on its vendor's inability to deploy the requested and agreed to emissions detecting drone—particularly when its choice of vendors was limited by circumstances beyond its control. Dkt. No. 97 at 2. To be sure, rescheduling and conducting the prior inspections has been inconvenient and costly. Dkt. No. 105 at 2–5, 8–9. But the County has not specifically described the additional burdens and costs it would be forced to incur from the limited additional inspection. *See, e.g.*, *Jaeger*, 2024 WL 2209550, at *2 (finding that because the defendant did not provide specific details about the anticipated burden or expense of fulfilling plaintiff's inspection request, its objections were conclusory and failed to show that another inspection was unduly burdensome or disproportionate to the needs of the case). Nor has the County shown that the burden of an additional drone deployment and handheld instrument inspection outweighs their likely benefit, particularly in light of the importance of accurate testing to BEW's allegations relating to Good Engineering Practices. Weighing these factors and the requirements of Rule 26, BEW has shown that another inspection is warranted. Accordingly, the Court grants BEW's request to conduct (1) an aerial methane emissions survey of the landfill via drone; and (2) a handheld surface emissions monitoring of areas of interest identified by the drone survey as the parties previously agreed, Dkt. No. 101 at 12, provided, however, that BEW must first pay the County's fees and costs associated with the canceled inspections on July 10 and 11.

The Court also does not grant BEW carte blanche to survey "until the inspection is completed" at some unidentified point as it requests. Dkt. No. 96-1 at 1. Rather, in light of the burden BEW has imposed on the County with its prior inspections and last minute rescheduling and cancellations, BEW gets only one more bite at this apple. The parties will schedule the inspection—which must be completed within eight hours—on a mutually agreeable date. BEW must conduct its inspection on that date unless it gives the County three full business days' notice that the inspection cannot proceed on the agreed upon day due to technical difficulties with the

drone or unworkably bad weather. BEW cannot use additional inspection methods—such as a helicopter—beyond the methods previously agreed to between the parties unless both parties agree.

Finally, while BEW will be permitted to take handheld measurements of emissions locations identified by the drone, it cannot sample additional nearby spots. Doing so should be unnecessary in light of BEW's representation that "[t]he drone will be able to more accurately pinpoint the location of the points of methane leakage" than the helicopter. Dkt. No. 98 at 5.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS BEW's motion to compel, Dkt. No. 96, on the condition that BEW pay the County's costs and fees associated with the canceled July 10 and 11 inspections. The Court extends the September 6, 2024 discovery deadline to October 15, 2024 solely to complete the inspection permitted by this Order. Dkt. Nos. 73, 100.

The Court may require BEW to pay the County's fees and costs associated with any violation of this Order by BEW or any untimely cancellation by BEW of a planned inspection. Given that the additional inspection may impact other case deadlines, the Court ORDERS the parties to submit a joint status report within 14 days after completion of the inspection requesting a modified case schedule, if needed.

Dated this 17th day of September, 2024.

Lauren King
United States District Judge